# UNITED STATES DISTRICT COURT
for the
Northern District of Texas

| | |
|---|---|
| United States of America<br>v.<br>DINESH SAH<br><br>Defendant(s) | )<br>)<br>) Case No. 3:20-MJ-960-BK<br>)<br>)<br>)<br>) |

**FILED**
September 11, 2020
KAREN MITCHELL
CLERK, U.S. DISTRICT COURT

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of **May 26, 2020** in the county of **Dallas** in the **Northern** District of **Texas**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 1344(2) | Knowingly execute, or attempt to execute, a scheme or artifice to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises [Bank Fraud] |

This criminal complaint is based on these facts:

See attached affidavit of FDIC-OIG Special Agent Karsten Gaarder.

☑ Continued on the attached sheet.

Via reliable electronic means, as authorized by Fed. R. Crim. P. 4.1, the agent confirmed under oath the validity of his facsimile signature, his knowledge of the contents herein, and the veracity of the same.

/s/ Karsten Gaarder
*Complainant's signature*

KARSTEN GAARDER, FDIC-OIG Special Agent
*Printed name and title*

Date: 9/11/2020

City and state: Dallas, Texas

*Judge's signature*

RENÉE HARRIS TOLIVER, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Karsten Gaarder, being duly sworn, hereby depose and state as follows:

**INTRODUCTION**

1. I am a Special Agent with the Federal Deposit Insurance Corporation, Office of Inspector General ("FDIC-OIG"), where I have been employed since June 2019. I am currently assigned to the Office of Investigations for the Dallas, Texas, region. My current duties include the investigation of financial crimes, including wire fraud and bank fraud, as well as other white-collar crimes. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

2. Before joining FDIC-OIG, I was a commissioned bank examiner with the FDIC in the Division of Risk Management Supervision for six years. I hold a Bachelor's Degree in Financial Management from the University of New Mexico, Albuquerque, New Mexico, and a Master's Degree in Management from the University of Texas at Arlington, Arlington, Texas. I am a Certified Fraud Examiner and have seven years of experience in the residential and commercial bankruptcy and collections industries.

3. Throughout the course of my career, I have conducted an array of criminal investigations involving money laundering, bank fraud, and other illegal schemes affecting financial institutions. I have experience conducting search, seizure, and arrest-warrant operations, as well as visual surveillance and witness interviews. Recently, I was assigned to work with the U.S. Department of Justice and other law-enforcement partners to investigate possible fraud associated with the stimulus and economic-assistance programs created by the federal government in response to the COVID-19 pandemic.

## PURPOSE OF THE AFFIDAVIT

4. This Affidavit is made in support of a criminal complaint against, and arrest warrant for, DINESH SAH ("SAH") for a violation of 18 U.S.C. § 1344(2) (Bank Fraud).

5. This Affidavit is based upon my personal investigation and investigation by others, including federal and local law-enforcement officials whom I know to be reliable and trustworthy. The facts contained herein have been obtained by examining documents gathered in the course of the investigation, visual surveillance, as well as through other means. This Affidavit does not include every fact known to me about this investigation but rather only those facts sufficient to establish probable cause.

## PROBABLE CAUSE

### Background

*The Small Business Administration*

6. The United States Small Business Administration ("SBA") is an executive-branch agency of the United States government that provides support to entrepreneurs and small businesses. The mission of the SBA is to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

*The Paycheck Protection Program*

7. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in or around March 2020 designed to provide emergency financial assistance to the millions of Americans suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the

authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

8. In order to obtain a PPP loan, a qualifying business must submit a PPP loan application, which is signed by an authorized representative of the business. The PPP loan application requires the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) must state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures are used to calculate the amount of money the small business is eligible to receive under the PPP. In addition, a business applying for a PPP loan must provide documentation showing its payroll expenses.

9. A PPP loan application must be processed by a participating lender. If a PPP loan application is approved, the participating lender funds the PPP loan using its own monies, which are 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, is transmitted by the lender to the SBA in the course of processing the loan.

10. PPP loan proceeds must be used by the business on certain permissible expenses: payroll costs, interest on mortgages, rent, and utilities. The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the

loan proceeds on these expense items within a designated period of time after receiving the proceeds and uses a certain amount of the PPP loan proceeds on payroll expenses.

### *Relevant Individuals and Entities*

11. SAH is a resident of Coppell, Texas, within the Northern District of Texas. At all relevant times, he lived in a single-family home located at 454 Clear Creek Lane, Coppell, Texas 75019, in Dallas County.

12. SAH owns or controls several corporate entities registered in various states. According to public records, Unilaxy International LLC is an active Texas corporation that was registered on or about May 19, 2020. The registered business address for Unilaxy International LLC is SAH's residence in Coppell, Texas. SAH is listed as the company's registered agent and managing member.

13. Lender 1 is a federally insured financial institution based in New Jersey. Lender 1 is an SBA Preferred Lender and participated as a PPP lender to small businesses.

14. Person 1 is a resident of Miami, Florida.

### THE SCHEME TO DEFRAUD

15. Evidence gathered in the investigation demonstrates probable cause to believe that on or about May 26, 2020, SAH knowingly executed, or attempted to execute, a scheme or artifice to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, namely, Lender 1, by means of false or fraudulent pretenses, representations, or promises, by submitting, and causing to be submitted, a false and fraudulent PPP

application to Lender 1 for an entity that he owned or controlled, in violation of 18 U.S.C. § 1344(2), as more fully described below.

**Fraudulent Unilaxy International LLC PPP Application to Lender 1**

16. According to bank records, on or about May 26, 2020, Lender 1 received an application from Unilaxy International LLC for a PPP loan in the amount of $1,999,103.62. The application was submitted in the name of Person 1, who was represented to be the business owner. The application described Unilaxy International LLC as a Texas company formed in or around January 2014 and listed its primary business address as 454 Clear Creek Lane, Coppell, Texas 75019, which is SAH's residence.

17. Person 1's listed phone number was (818) 324-9870, which is a mobile account serviced by AT&T. AT&T records show that this phone number was for a user located in Coppell, Texas, and that SAH was the responsible billing party on the account, reachable at email address dinesh_sah@hotmail.com.

18. Bank documents recorded the Internet Protocol address from which the application originated. According to internet-provider records, the IP address from which the application was submitted was registered to SAH at 454 Clear Creek Lane, Coppell, Texas 75019.

19. The application submitted to Lender 1 stated that Unilaxy International LLC's average monthly payroll was $799,641.45 and that the company had 99 employees. As purported documentation of Unilaxy International LLC's payroll numbers, the PPP application included a purported Employer's Quarterly Federal Tax

Return (IRS Form 941) for the first, second, third, and fourth quarters of 2019, as well as the first quarter of 2020. Each of the purported Form 941s claimed that Unilaxy International LLC had paid $2,384,367 in wages, tips, and other compensation.

20. The application also included a purported Employer's Annual Federal Unemployment Tax Return (Form 940) for 2019. The purported Form 940 claimed that Unilaxy International LLC had paid $9,537,468 in wages, tips, and other compensation.

21. Each of the tax forms described above listed Unilaxy International LLC's business address as 454 Clear Creek Lane, Coppell, Texas 75019.

22. In addition, the application included purported bank statements from an account at JP Morgan Chase ending in -2642 in the name of Unilaxy International LLC, which made it appear that Unilaxy International LLC had paid, among other things, monthly payroll to employees and a lease for office space in 2019 and 2020.

23. Based upon the information provided to Lender 1 in the Unilaxy International LLC PPP application, Lender 1 approved and funded the PPP loan. On or about June 1, 2020, $1,999,103.62 was transferred to a bank account at JP Morgan Chase ending in -2642 held in the name of Unilaxy International LLC, on which SAH was the sole signer.[1]

---

[1] Bank records show that, prior to the deposit of these PPP loan proceeds, the balance of this account was $0.

*Evidence That the Unilaxy International LLC PPP Application to Lender 1 Was Falsified*

24. The government's investigation has indicated that the Unilaxy International LLC PPP application to Lender 1 contained false and fraudulent information.

25. As described above, the application claimed that the business was established in or around January 2014 in Texas and had paid wages to 99 employees in 2019 and the first quarter of 2020. Information obtained from the Texas Comptroller of Public Accounts and the Texas Secretary of State, however, indicates that Unilaxy International LLC was formed as a domestic limited-liability company and received its state franchise permit on May 19, 2020.

26. Moreover, information obtained from the IRS confirms that the Employer Identification Number ("EIN") for Unilaxy International LLC used in the application was created on or about May 21, 2020. The IP address from which the EIN was requested online was registered to SAH at 454 Clear Creek Lane, Coppell, Texas 75019.

27. As described above, the application included an IRS Form 941, purportedly filed with the IRS, for the first, second, third, and fourth quarters of 2019, as well as the first quarter of 2020. Information obtained from the IRS, however, shows that the IRS has no record of any such form ever being submitted on behalf of Unilaxy International LLC.

28. As described above, the application also included an IRS Form 940, purportedly filed with the IRS, for 2019. Information obtained from the IRS, however,

shows that the IRS has no record of any such form ever being submitted on behalf of Unilaxy International LLC.

29. In addition, as described above, the application included purported bank statements from JP Morgan Chase that showed, among other things, disbursements by the business to Intuit for payroll expenses and to "WeWorks"[2] for the use of office space in 2019 and 2020. These bank statements, however, are false and fraudulent. While SAH did own the account at JP Morgan Chase ending in -2642, authentic Chase bank records obtained in the investigation reveal that the account was created in or around May 2020 and in actuality reflects materially different disbursements, including the use of PPP loan proceeds from various financial institutions for personal expenses. Moreover, an analysis of the metadata underlying the bank statements submitted as part of the application confirms that these statements were in fact generated by SAH in Excel, where balances and line items were wholly fabricated. In addition, neither WeWork nor Intuit have records of any business activity by either Unilaxy International LLC or SAH.

30. The application also made several additional fraudulent certifications:

    a. The application falsely represented that the funds sought would be used to pay payroll and other permissible business expenses in accordance with PPP rules when, in fact, SAH diverted the proceeds for his personal benefit;

    b. The application falsely represented that Unilaxy International LLC or its owner did not own any other business or have common management with

---

[2] "WeWorks" appears to be a misspelling of a real company called WeWork, which is a commercial real-estate company that leases shared workspaces for entrepreneurs.

  any other business, and that they had not, and would not, receive another PPP loan, when, in fact, SAH owned or controlled several other purported businesses, some of which had previously applied for PPP loans with Lender 1; and

 c. The application falsely represented that Person 1 was the only owner having 20% or more equity in Unilaxy International LLC, when, in fact, SAH wholly owned and controlled this entity.

*Use of Unilaxy International LLC PPP Loan Proceeds*

 31. Bank records show that upon receiving the PPP loan proceeds from Lender 1 into the JP Morgan Chase account ending in -2642, SAH used the proceeds for various personal expenses, including $266,502 to pay off the mortgage on his Coppell, Texas residence; $450,000 to purchase a new residence in Coppell, Texas; $537,250 to pay off the mortgages on two California residential properties owned by his wife; and a $50,000 wire transfer to India. In addition, SAH wrote a check to himself for $200,000 and withdrew an additional $250,000 the next day, reflecting potential cash withdrawals or their equivalent.

**Conclusion**

32. Based upon my training and experience, and the information provided in this Affidavit, I respectfully submit that there is probable cause to believe SAH violated 18 U.S.C. § 1344(2) (Bank Fraud).

*/s/ Karsten Gaarder*
Special Agent Karsten Gaarder  FDIC
Office of Inspector General

Via reliable electronic means, as authorized by Fed. R. Crim. P. 4.1, on September 11, 2020, the agent confirmed under oath the validity of his facsimile signature, his knowledge of the contents herein, and the veracity of the same..

Renee Harris Toliver
United States Magistrate Judge