ORIGINAL IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

OCT - 6 2020

CLERK, U.S. DISTRICT COURT
By_____
    Deputy

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. |
| v. | **3-20CR0484-S** |
| DINESH SAH | |

## INDICTMENT

The Grand Jury charges:

## GENERAL ALLEGATIONS

At all times material to this Indictment:

### *Defendant and Relevant Individuals and Entities*

1.      Defendant Dinesh SAH was a resident of Coppell, Texas, within the

Northern District of Texas.

2.      Person 1 was SAH's spouse and a resident of Coppell, Texas.

3.      Person 2 was a resident of Miami, Florida.

4.      Person 3 was a resident of Jersey City, New Jersey.

5.      Person 4 was a resident of Baltimore, Maryland.

6.      Person 5 was a resident of Fremont, California.

7.      SAH owned or controlled corporate entities that were registered in various

states, including the following (collectively, the "SAH-controlled entities"):

a.      2017 Cleveland Springfield LLC was a Texas corporation that was

registered on or about May 18, 2020.  The registered business address for 2017 Cleveland

1

Springfield LLC was SAH's residence in Coppell, Texas. SAH was listed as the company's registered agent and managing member.

b.    Quadrant Clover LLP was a Texas corporation that was registered on or about May 15, 2020. The registered business address for Quadrant Clover LLP was SAH's residence in Coppell, Texas. SAH was listed as the company's registered agent and managing member.

c.    Symbiont Retailers LLC was a cancelled California corporation that was registered on or about May 10, 2010. The registered business address for Symbiont Retailers LLC was a residential property owned by Person 1. Person 1 was listed as the company's registered agent.

d.    Unilaxy International LLC was a Texas corporation that was registered on or about May 19, 2020. The registered business address for Unilaxy International LLC was SAH's residence in Coppell, Texas. SAH was listed as the company's registered agent and managing member.

e.    Horizon Enterprises LLC was a suspended California corporation that was registered on or about January 21, 1999. SAH was listed as the company's registered agent, managing member, President, and Chief Executive Officer.

f.    ChargEdge, Inc. was a California corporation that was registered on or about February 15, 2017. Person 5 was listed as the company's registered agent. SAH was listed as the company's Chief Executive Officer.

g.    Relief Without Borders LLC was a Texas corporation that was registered on or about May 15, 2020. The registered business address for Relief Without

2

Borders LLC was SAH's residence in Coppell, Texas. SAH was listed as the company's registered agent and managing member.

        h.     Horizon 5 Lakes LLC was a Texas corporation that was registered on or about May 15, 2020. The registered business address for Horizon 5 Lakes LLC was SAH's residence in Coppell, Texas. SAH was listed as the company's registered agent.

        i.     Convergenz Entertainment LLC was a New Mexico corporation that was registered on or about February 19, 2016. Person 1 was the company's purported owner.

        j.     Unilaxy Advisors LLC was a Nevada corporation that was registered on or about December 17, 2014. SAH was listed as the company's managing member.

        k.     Symbiont LLC was a California corporation that was registered on or about May 26, 2016. SAH was the purported owner of the company, whose business address was a residential property owned by Person 1.

### *The Small Business Administration*

        8.     The United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

***The Paycheck Protection Program***

9.      The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 that was designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic.  One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").  In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

10.     In order to obtain a PPP loan, a qualifying business was required to submit a PPP loan application signed by an authorized representative of the business.  The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan.  In the PPP loan application, the applicant (through its authorized representative) was required to state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees.  These figures were used to calculate the amount of money the small business was eligible to receive under the PPP.  In addition, the applicant was required to provide documentation showing its payroll expenses.

11.     A business's PPP loan application was received and processed, in the first instance, by a participating lender.  If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies.  Data from the

application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

12.     PPP loan proceeds were required to be used by the business on certain permissible expenses: payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time after receiving the proceeds and used a certain amount of the PPP loan proceeds on payroll expenses.

### *Relevant Lending Institutions*

13.     Lender 1 was a federally insured financial institution based in New Jersey.

14.     Lender 2 was a financial-services company based in Georgia.

15.     Lender 3 was a financial-services company based in California.

16.     Lender 4 was a federally insured financial institution based in Utah.

17.     Lender 5 was a federally insured financial institution based in North Carolina.

18.     Lender 6 was a financial-services company based in Florida.

19.     Lender 7 was a federally insured financial institution based in Utah.

20.     Lender 8 was a federally insured financial institution based in Iowa.

21.     Lender 1, Lender 2, Lender 3, Lender 4, Lender 5, Lender 6, Lender 7, and Lender 8 were authorized by the SBA to participate as PPP lenders to small businesses.

22.     Company 1 and Company 2 were financial-technology companies based in New Jersey and Utah, respectively.  Company 1 and Company 2 participated in the SBA's PPP by, among other things, acting as service providers between small businesses and certain lenders.  Small businesses seeking PPP loans could apply through Company 1 and Company 2 for PPP loans.  Company 1 and Company 2 would review the loan applications.  If a loan application received by Company 1 and Company 2 was approved for funding, a partner lender, such as Lender 1, disbursed the loan funds to the applicant.

## THE SCHEME TO DEFRAUD

23.     Beginning in or around April 2020, and continuing until in or around August 2020, within the Northern District of Texas, and elsewhere, defendant SAH and others, knowingly and with intent to defraud, devised, participated in, executed, and attempted to execute a scheme and artifice to defraud the SBA, Lender 1, Lender 2, Lender 3, Lender 4, Lender 5, Lender 6, Lender 7, Lender 8, Company 1, and Company 2 to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

24.     As part of the scheme to defraud, SAH submitted, and caused to be submitted, false and fraudulent PPP applications in the names of certain SAH-controlled entities to various lending institutions, which approved the applications and funded the loans, as further described below.

| | Name of Applicant | Name of Business Entity | Approx. Amount Sought | Lender | Approx. Date | Status |
|---|---|---|---|---|---|---|
| a. | Person 3 | 2017 Cleveland Springfield LLC | $1,987,500 | Lender 1 | May 18, 2020 | Funded |
| b. | Person 4 | Quadrant Clover LLP | $1,184,000 | Lender 1 | May 18, 2020 | Funded |
| c. | Person 1 | Symbiont Retailers LLC | $1,986,972 | Lender 1 | May 20, 2020 | Funded |
| d. | Person 2 | Unilaxy International LLC | $1,999,103.62 | Lender 1 | May 26, 2020 | Funded |
| e. | Person 3 | Horizon Enterprises LLC | $1,968,958 | Lender 1 | August 8, 2020 | Funded |
| f. | Person 5 | ChargEdge, Inc. | $1,999,102.50 | Lender 1 | August 9, 2020 | Funded |
| g. | SAH | Relief Without Borders LLC | $1,992,966 | Lender 2 | May 20, 2020 | Funded |
| h. | SAH | Horizon 5 Lakes LLC | $1,471,771 | Lender 2 | June 3, 2020 | Funded |
| i. | SAH | Horizon 5 Lakes LLC | $1,972,800 | Lender 3 | May 26, 2020 | Funded |
| j. | Person 1 | Convergenz Entertainment LLC | $937,470 | Lender 4 | May 11, 2020 | Funded |
| k. | SAH | Unilaxy Advisors LLC | $247,400.67 | Lender 5 | April 28, 2020 | Funded |

## Purpose of the Scheme to Defraud

25.     It was the purpose of the scheme for SAH to unjustly enrich himself and others by fraudulently obtaining PPP loan proceeds under false and misleading pretenses.

## Manner and Means of the Scheme to Defraud

26.     The fraudulent scheme operated and was carried out, in substance, as follows:

### *Fraudulent PPP Applications to Lender 1*

27.     As part of the scheme to defraud, SAH submitted, and caused to be submitted, six false and fraudulent PPP applications to Lender 1 for certain SAH-controlled entities (collectively, the "Lender 1 PPP Applications").  Specifically:

a.      On or about May 18, 2020, SAH submitted, and caused to be submitted, through Company 1, an application for a PPP loan in the amount of $1,987,500 for borrower 2017 Cleveland Springfield LLC, purportedly owned and controlled by Person 3, and having 97 employees and average monthly payroll expenses of $795,000;

b.      On or about May 18, 2020, SAH submitted, and caused to be submitted, through Company 1, an application for a PPP loan in the amount of $1,184,000 for borrower Quadrant Clover LLP, purportedly owned and controlled by Person 4, and having 46 employees and average monthly payroll expenses of $473,600;

c.      On or about May 20, 2020, SAH submitted, and caused to be submitted, an application for a PPP loan in the amount of $1,986,972 for borrower

Symbiont Retailers LLC, purportedly owned and controlled by Person 1, and having 97 employees and average monthly payroll expenses of $794,789;

       d.      On or about May 26, 2020, SAH submitted, and caused to be submitted, an application for a PPP loan in the amount of $1,999,103.62 for borrower Unilaxy International LLC, purportedly owned and controlled by Person 2, and having 99 employees and average monthly payroll expenses of $799,641.45;

       e.      On or about August 8, 2020, SAH submitted, and caused to be submitted, an application for a PPP loan in the amount of $1,968,958 for borrower Horizon Enterprises LLC, purportedly owned and controlled by Person 3, and having 148 employees and average monthly payroll expenses of $787,583; and

       f.      On or about August 9, 2020, SAH submitted, and caused to be submitted, an application for a PPP loan in the amount of $1,999,102.50 for borrower ChargEdge, Inc., purportedly owned and controlled by Person 5, and having 137 employees and average monthly payroll expenses of $799,641.

      28.     As a further part of the scheme to defraud, SAH submitted, and caused to be submitted, false and fraudulent documents and information in the Lender 1 PPP Applications, including the following:

       a.      Various false Internal Revenue Service ("IRS") tax forms, purportedly filed in the names of the six entities applying for PPP funds; and

       b.      False bank statements, purportedly from accounts at J.P. Morgan Chase in the names of each of the six entities, which made it appear that they had paid, among other things, monthly payroll to employees.

29.     As a further part of the scheme to defraud, SAH made, and caused to be made, additional false statements in the Lender 1 PPP applications, which SAH knew were false when he made them and caused them to be made. For example:

a.     SAH falsely represented that the funds sought through the Lender 1 PPP Applications would be used to pay payroll and other permissible business expenses when, in fact, SAH intended to divert the proceeds for personal benefit;

b.     SAH falsely represented that the entities listed in the Lender 1 PPP Applications were in operation on February 15, 2020, and had paid salaries and payroll taxes or paid independent contractors, when, in fact, the purported tax forms showing that wages were paid to employees had never been filed with the IRS; and

c.     With respect to the PPP applications for Horizon Enterprises LLC and ChargEdge, Inc., SAH falsely represented that the applicant was not presently subject to felony criminal charges in any jurisdiction, when, in fact, as he then knew, he had been charged with violating (i) Texas Penal Code § 22.01, Assault, a felony under Texas law, on or about July 1, 2020; and (ii) Texas Penal Code § 22.04, Injury to a Child, Elderly Individual, or Disabled Individual, a felony under Texas law, on or about July 3, 2020, and both charges were then pending.

30.     In reliance upon SAH's materially false statements in the Lender 1 PPP applications, Lender 1 approved and funded the PPP loans. Specifically, funding wires were sent on or about the following dates:

10

a.     In connection with the PPP application for 2017 Cleveland Springfield LLC, on or about May 19, 2020, Company 1 wired approximately $1,987,500 to an account ending in -8854 at J.P. Morgan Chase held in SAH's name;

b.     In connection with the PPP application for Quadrant Clover LLP, on or about May 19, 2020, Company 1 wired approximately $1,184,000 to an account ending in -7970 at J.P. Morgan Chase held in SAH's name;

c.     In connection with the PPP application for Symbiont Retailers LLC, on or about May 26, 2020, Lender 1 wired approximately $1,986,972 to an account ending in -9715 at J.P. Morgan Chase held in the name of Symbiont LLC, on which SAH was the sole signer;

d.     In connection with the PPP application for Unilaxy International LLC, on or about June 1, 2020, Lender 1 wired approximately $1,999,103.62 to an account ending in -2642 at J.P. Morgan Chase held in the name of Unilaxy International LLC, on which SAH was the sole signer;

e.     In connection with the PPP application for Horizon Enterprises LLC, on or about August 11, 2020, Lender 1 wired approximately $1,968,957.50 to an account ending in -4321 at J.P. Morgan Chase held in the name of Symbiont LLC, on which SAH was the sole signer; and

f.     In connection with the PPP application for ChargEdge, Inc., on or about August 11, 2020, Lender 1 wired approximately $1,999,102.50 to an account ending in -5588 at J.P. Morgan Chase held in SAH's name.

11

*__Fraudulent PPP Applications to Lender 2__*

31.     As part of the scheme to defraud, SAH submitted, and caused to be submitted, two false and fraudulent PPP applications to Lender 2 for certain SAH-controlled entities (collectively, the "Lender 2 PPP Applications"). Specifically:

a.      On or about May 20, 2020, SAH submitted, and caused to be submitted, an application for a PPP loan in the amount of $1,992,966 for borrower Relief Without Borders LLC, purportedly having 101 employees and average monthly payroll expenses of $797,187; and

b.      On or about June 3, 2020, SAH submitted, and caused to be submitted, an application for a PPP loan in the amount of $1,471,771 for borrower Horizon 5 Lakes LLC, purportedly having 71 employees and average monthly payroll expenses of $588,709.

32.     As a further part of the scheme to defraud, SAH submitted, and caused to be submitted, false and fraudulent documents and information in the Lender 2 PPP Applications. These false documents included various false IRS tax forms, purportedly filed in the names of Relief Without Borders LLC and Horizon 5 Lakes LLC; and false bank statements, purportedly from accounts at J.P. Morgan Chase in the names of these two entities.

33.     As a further part of the scheme to defraud, SAH made, and caused to be made, false statements in the Lender 2 PPP Applications, which SAH knew were false when he made them and caused them to be made. For example, SAH falsely represented that the funds sought through the Lender 2 PPP Applications would be used to pay

payroll and other permissible business expenses when, in fact, SAH intended to divert the proceeds for personal benefit. SAH also falsely represented that these entities were in operation on February 15, 2020, and had paid salaries and payroll taxes or paid independent contractors, when, in fact, the purported tax forms showing that wages were paid to employees had never been filed with the IRS.

34.     In reliance upon SAH's materially false statements in the Lender 2 PPP Applications, Lender 2 approved and funded the PPP loans. Specifically, on or about the following dates, Lender 2 sent the following funding wires:

a.      In connection with the PPP application for Relief Without Borders LLC, on or about May 22, 2020, Lender 2 wired approximately $1,992,966 to an account ending in -8964 at J.P. Morgan Chase held in SAH's name; and

b.      In connection with the PPP application for Horizon 5 Lakes LLC, on or about June 5, 2020, Lender 2 wired approximately $1,471,771 to an account ending in -0121 at J.P. Morgan Chase held in the name of Convergenz Entertainment LLC, on which SAH was the sole signer.

### *Fraudulent PPP Application to Lender 3*

35.     As part of the scheme to defraud, SAH submitted, and caused to be submitted, a false and fraudulent PPP application to Lender 3 for an entity that he owned or controlled (the "Lender 3 PPP Application"). Specifically, on or about May 26, 2020, SAH submitted, and caused to be submitted, an application for a PPP loan in the amount of $1,972,800 for borrower Horizon 5 Lakes LLC, purportedly having 71 employees and average monthly payroll expenses of $789,121.

13

36.     As a further part of the scheme to defraud, SAH submitted, and caused to be submitted, false and fraudulent documents and information in the Lender 3 PPP Application. These false documents included various false IRS tax forms, purportedly filed in the name of Horizon 5 Lakes LLC; and false bank statements, purportedly from accounts at J.P. Morgan Chase in the name of Horizon 5 Lakes LLC.

37.     As a further part of the scheme to defraud, SAH made, and caused to be made, false statements in the Lender 3 PPP Application, which SAH knew were false when he made them and caused them to be made. For example, SAH falsely represented that the funds sought through the Lender 3 PPP Application would be used to pay payroll and other permissible business expenses when, in fact, SAH intended to divert the proceeds for personal benefit. SAH also falsely represented that Horizon 5 Lakes LLC was in operation on February 15, 2020, and had paid salaries and payroll taxes or paid independent contractors, when, in fact, the purported tax forms showing that wages were paid to employees had never been filed with the IRS.

38.     In reliance upon SAH's materially false statements in the Lender 3 PPP Application, Lender 3 approved and funded the PPP loan. Specifically, on or about June 5, 2020, Lender 3 wired approximately $1,509,406 to an account ending in -0121 at J.P. Morgan Chase held in the name of Convergenz Entertainment LLC, on which SAH was the sole signer.

### *Fraudulent PPP Application to Lender 4*

39.     As part of the scheme to defraud, SAH submitted, and caused to be submitted, through Company 1, a false and fraudulent PPP application to Lender 4 for an

14

entity that he owned or controlled (the "Lender 4 PPP Application"). Specifically, on or about May 11, 2020, SAH submitted, and caused to be submitted, an application for a PPP loan in the amount of $937,470 for borrower Convergenz Entertainment LLC, purportedly owned and controlled by Person 1, and having 41 employees and average monthly payroll expenses of $374,988.36.

40.     As a further part of the scheme to defraud, SAH submitted, and caused to be submitted, false and fraudulent documents and information in the Lender 4 PPP Application. These false documents included various false IRS tax forms, purportedly filed in the name of Convergenz Entertainment LLC; and false bank statements, purportedly from accounts at J.P. Morgan Chase in the name of Convergenz Entertainment LLC.

41.     As a further part of the scheme to defraud, SAH made, and caused to be made, false statements in the Lender 4 PPP Application, which SAH knew were false when he made them and caused them to be made. For example, SAH falsely represented that the funds sought through the Lender 4 PPP Application would be used to pay payroll and other permissible business expenses when, in fact, SAH intended to divert the proceeds for personal benefit. SAH also falsely represented that Convergenz Entertainment LLC was in operation on February 15, 2020, and had paid salaries and payroll taxes or paid independent contractors, when, in fact, the purported tax forms showing that wages were paid to employees had never been filed with the IRS.

42.     In reliance upon SAH's materially false statements in the Lender 4 PPP Application, Lender 4 approved and funded the PPP loan. Specifically, on or about May

13, 2020, Company 1 wired approximately $937,470 to an account ending in -5588 at J.P. Morgan Chase held in SAH's name.

### *Fraudulent PPP Application to Lender 5*

43.     As part of the scheme to defraud, SAH submitted, and caused to be submitted, a false and fraudulent PPP application to Lender 5 for an entity that he owned or controlled (the "Lender 5 PPP Application"). Specifically, on or about April 28, 2020, SAH submitted, and caused to be submitted, an application for a PPP loan in the amount of $247,400.67 for borrower Unilaxy Advisors LLC, doing business as "Unilaxy International," purportedly having 9 employees and average monthly payroll expenses of $94,960.27.

44.     As a further part of the scheme to defraud, SAH submitted, and caused to be submitted, false and fraudulent documents and information in the Lender 5 PPP Application, including various false IRS tax forms, purportedly filed in the name of Unilaxy Advisors LLC.

45.     As a further part of the scheme to defraud, SAH made, and caused to be made, false statements in the Lender 5 PPP Application, which SAH knew were false when he made them and caused them to be made. For example, SAH falsely represented that the funds sought through the Lender 5 PPP Application would be used to pay payroll and other permissible business expenses when, in fact, SAH intended to divert the proceeds for personal benefit. SAH also falsely represented that Unilaxy Advisors LLC was in operation on February 15, 2020, and had paid salaries and payroll taxes or paid

independent contractors, when, in fact, the purported tax forms showing that wages were paid to employees had never been filed with the IRS.

46.     In reliance upon SAH's materially false statements in the Lender 5 PPP Application, Lender 5 approved and funded the PPP loan.  Specifically, on or about May 4, 2020, Lender 5 wired approximately $247,400 to an account ending in -2798 at Bank of America held in the name of Unilaxy Advisors LLC.

47.     After SAH received PPP funds from Lender 1, Lender 2, Lender 3, Lender 4, and Lender 5, as described above, he used the proceeds for various personal expenses, including to purchase new homes and luxury vehicles, and for international money transfers.

### *Fraudulent PPP Applications to Lender 6, Lender 7, Lender 8, and Company 2*

48.     As part of the scheme to defraud, SAH submitted, and caused to be submitted, an additional four false and fraudulent PPP loan applications to Lender 6, Lender 7, Lender 8, and Company 2 on behalf of entities that he owned or controlled, none of which were approved (collectively, the "Rejected PPP Applications").

Each of the Rejected PPP Applications contained material misrepresentations regarding the particular entity's number of employees and average monthly payroll expenses, as described below.

| | Name of Applicant | Name of Business Entity | Approx. Amount Sought | Lender | Approx. Date | Number of Employees | Average Monthly Payroll | Status |
|---|---|---|---|---|---|---|---|---|
| a. | SAH | Unilaxy International LLC | $1,986,900 | Lender 6/Company 2 | May 25, 2020 | 99 | $794,789 | Rejected |
| b. | SAH | Symbiont LLC | $1,967,700 | Lender 7 | June 22, 2020 | 100 | $787,066 | Rejected |
| c. | Person 2 | Unilaxy International LLC | $1,896,872 | Lender 7 | June 13, 2020 | 99 | $794,789 | Rejected |
| d. | SAH | Symbiont LLC | $1,182,500 | Lender 8/Company 2 | May 13, 2020 | 46 | $473,030 | Rejected |

49.     As a further part of the scheme defraud, in support of the Rejected PPP Applications, SAH submitted, and caused to be submitted, to lenders false and fraudulent documents and information, including various false IRS tax forms, purportedly filed in the names of these entities; and false bank statements, purportedly from accounts at J.P. Morgan Chase in the names of these entities.

50.     As a further part of the scheme to defraud, SAH made, and caused to be made, false statements in certain Rejected PPP Applications, which SAH knew were false when he made them and caused them to be made. For example, SAH falsely represented that these entities had paid salaries and payroll taxes or paid independent contractors, when, in fact, the purported tax forms showing that wages were paid to employees had never been filed with the IRS.

51.     Based upon the 15 PPP loan applications submitted to lenders, as described above, SAH's scheme to defraud caused intended losses of approximately $24.8 million.

18

## COUNTS ONE THROUGH THREE

Wire Fraud
(Violation of 18 U.S.C. §§ 1343 and 2)

52.    The allegations in paragraphs 1 through 51 of this Indictment are re-alleged and incorporated as if fully set forth herein.

53.    Beginning in or around April 2020, and continuing until in or around August 2020, in the Northern District of Texas, and elsewhere, the defendant, **DINESH SAH**, with intent to defraud, having devised and participated in the above-described scheme and artifice to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, did, for the purpose of executing the scheme and artifice, knowingly transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds on the following dates as further described below, each such wire transmission constituting a separate count:

| COUNT | APPROX. DATE | DESCRIPTION OF WIRE |
|---|---|---|
| ONE | June 5, 2020 | Interstate wire transfer in the amount of $1,509,406 from Lender 3 to J.P. Morgan Chase account ending in -0121 in the name of Convergenz Entertainment LLC |
| TWO | May 22, 2020 | Interstate telephone call between SAH and a representative of Company 2 regarding fraudulent PPP application for Unilaxy International LLC |
| THREE | May 20, 2020 | Interstate submission of fraudulent PPP application for Relief Without Borders LLC to Lender 2 |

All in violation of 18 U.S.C. §§ 1343 and 2.

19

## COUNTS FOUR THROUGH SIX
Bank Fraud
(Violation of 18 U.S.C. §§ 1344(2) and 2)

54.     The allegations in paragraphs 1 through 51 of this Indictment are re-alleged and incorporated as if fully set forth herein.

55.     Beginning in or around April 2020, and continuing until in or around August 2020, in the Northern District of Texas, and elsewhere, the defendant, **DINESH SAH**, with intent to defraud, knowingly devised, intended to devise, and participated in a scheme and artifice to obtain the moneys, funds, credits, assets, securities, and property owned by and under the custody and control of Lender 1 by means of materially false and fraudulent pretenses, representations, and promises.

56.     On or about the dates set forth below, in the Northern District of Texas, and elsewhere, the defendant, **DINESH SAH**, knowingly executed the above-described scheme, each execution constituting a separate count.

| COUNT | APPROX. DATE | ACT |
|---|---|---|
| FOUR | August 8, 2020 | Submission of fraudulent PPP application for Horizon Enterprises LLC to Lender 1 |
| FIVE | May 26, 2020 | Submission of fraudulent PPP application for Unilaxy International LLC to Lender 1 |
| SIX | May 20, 2020 | Submission of fraudulent PPP application for Symbiont Retailers LLC to Lender 1 |

All in violation of 18 U.S.C. §§ 1344(2) and 2.

## COUNT SEVEN
Engaging in Monetary Transactions in Property
Derived from Specified Unlawful Activity
(Violation of 18 U.S.C. §§ 1957 and 2)

57.     The allegations in paragraphs 1 through 51 of this Indictment are re-

alleged and incorporated as if fully set forth herein.

58.     On or about the date set forth below, in the Northern District of Texas, and

elsewhere, the defendant, **DINESH SAH**, knowing that the funds involved represented

the proceeds of some form of unlawful activity, engaged in and willfully caused others

to engage in the following monetary transaction, in and affecting interstate commerce, in

criminally derived property of a value greater than $10,000, which property, in fact, was

derived from specified unlawful activity, namely, wire fraud, committed in violation of

Title 18, United States Code, Section 1343, and bank fraud, committed in violation of

Title 18, United States Code, Section 1344(2):

| COUNT | APPROX. DATE | MONETARY TRANSACTION |
|-------|--------------|----------------------|
| SEVEN | July 13, 2020 | Interstate transfer of $2,000,000 from J.P. Morgan Chase bank account ending in -2642 in the name of Unilaxy International LLC to an account at Technology Credit Union for Person 5 |

All in violation of 18 U.S.C. §§ 1957 and 2.

## NOTICE OF FORFEITURE

Notice is hereby given of 18 U.S.C. § 982 and 28 U.S.C. § 2461(c).  Under Section 2461(c), criminal forfeiture is applicable to any offenses for which forfeiture is authorized by any other statute, including but not limited to 18 U.S.C. § 981 and all specified unlawful activities listed or referenced in 18 U.S.C. § 1956(c)(7), which are incorporated as to proceeds by Section 981(a)(1)(C).  The following property is subject to forfeiture in accordance with Section(s) 982 and/or 2461(c):

1.      All property which constitutes or is derived from proceeds of the violations set forth in this Indictment;

2.      All property involved in such violations or traceable to property involved in such violations; and

3.      If, as set forth in 21 U.S.C. § 853(p), any property described in (a) or (b) cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, all other property of the defendants to the extent of the value of the property described in (a) and (b).

Specifically:

**Money Judgment**

1.      The proceeds obtained as a result of the offenses in Counts One through Seven in this Indictment, in the form of a money judgment;

22

**Bank Accounts**

2.     $2,848,012.14 in funds seized from J.P. Morgan Chase account ending in -0206 on or about September 21, 2020, maintained in the name of Dinesh Sah;

3.     $1,000,026.53 in funds seized from J.P. Morgan Chase account ending in -4556 on or about September 21, 2020, maintained in the name of Dinesh Sah;

4.     $161,611.65 in funds seized from J.P. Morgan Chase account ending in -9688 on or about September 21, 2020, maintained in the name of Dinesh Sah;

5.     $50,004.51 in funds seized from J.P. Morgan Chase account ending in -0259 on or about September 21, 2020, maintained in the name of Unilaxy International LLC;

6.     $50,001.49 in funds seized from J.P. Morgan Chase account ending in -5913 on or about September 21, 2020, maintained in the name of Horizon 5 Lakes LLC;

7.     $50,001.49 in funds seized from J.P. Morgan Chase account ending in -7047 on or about September 21, 2020, maintained in the name of Relief Without Borders LLC;

8.     $50,005.33 in funds seized from J.P. Morgan Chase account ending in -7802 on or about September 21, 2020, maintained in the name of Convergenz Entertainment LLC;

9.     $50,001.49 in funds seized from J.P. Morgan Chase account ending in -2501 on or about September 21, 2020, maintained in the name of Symbiont LLC;

10.    $43,220.64 in funds seized from J.P. Morgan Chase account ending in -5588 on or about September 21, 2020, maintained in the name of Dinesh Sah;

11. $27,128.00 in funds seized from J.P. Morgan Chase account ending in -5779 on or about September 21, 2020, maintained in the name of Panin LLC;

12. $19,188.22 in funds seized from J.P. Morgan Chase account ending in -2642 on or about September 21, 2020, maintained in the name of Unilaxy International LLC;

13. $10,000.18 in funds seized from J.P. Morgan Chase account ending in -5102 on or about September 21, 2020, maintained in the name of Panin LLC;

14. $10,000.16 in funds seized from J.P. Morgan Chase account ending in -7970 on or about September 21, 2020, maintained in the name of Dinesh Sah;

15. $10,000.16 in funds seized from J.P. Morgan Chase account ending in -8854 on or about September 21, 2020, maintained in the name of Dinesh Sah;

16. $10,000.16 in funds seized from J.P. Morgan Chase account ending in -8964 on or about September 21, 2020, maintained in the name of Dinesh Sah;

17. $10,000.10 in funds seized from J.P. Morgan Chase account ending in -6921 on or about September 21, 2020, maintained in the name of Gysin Group LLC;

18. $10,000.09 in funds seized from J.P. Morgan Chase account ending in -9980 on or about September 21, 2020, maintained in the name of Quadrant Clover LLC;

19. $10,000.00 in funds seized from J.P. Morgan Chase account ending in -6708 on or about September 21, 2020, maintained in the name of Horizon 5 Lakes LLC;

20. $9,905.00 in funds seized from J.P. Morgan Chase account ending in -0121 on or about September 21, 2020, maintained in the name of Convergenz Entertainment LLC;

21.     $9,905.00 in funds seized from J.P. Morgan Chase account ending in -4321 on or about September 21, 2020, maintained in the name of Symbiont LLC d/b/a Symbiont Retailers;

22.     $9,905.00 in funds seized from J.P. Morgan Chase account ending in -9715 on or about September 21, 2020, maintained in the name of Symbiont LLC;

23.     $9,810.00 in funds seized from J.P. Morgan Chase account ending in -9935 on or about September 21, 2020, maintained in the name of Relief Without Borders LLC;

24.     $2,500.00 in funds seized from J.P. Morgan Chase account ending in -1252 on or about September 21, 2020, maintained in the name of Gysin Group LLC;

25.     $2,500.00 in funds seized from J.P. Morgan Chase account ending in -7773 on or about September 21, 2020, maintained in the name of Quadrant Clover LLP;

26.     $100,008.57 in funds seized from Bank of America account ending in -5041 on or about September 21, 2020, maintained in the name of Dinesh Sah;

27.     $58,203.56 in funds seized from Bank of America account ending in -4437 on or about September 21, 2020, maintained in the name of Dinesh Sah;

28.     $28,441.01 in funds seized from Bank of America account ending in -2798 on or about September 21, 2020, maintained in the name of Unilaxy Advisors LLC;

29.     $9,997.72 in funds seized from Bank of America account ending in -3028 on or about September 21, 2020, maintained in the name of Unilaxy Advisors LLC;

30.     $250,032.53 in funds seized from Comerica account ending in -0854 on or about September 21, 2020, maintained in the name of Symbiont Capital LLC;

31.     $250,032.53 in funds seized from Comerica account ending in -7885 on or about September 21, 2020, maintained in the name of Dinesh Sah;

32.     $250,000.00 in funds seized from Comerica account ending in -0839 on or about September 21, 2020, maintained in the name of Unilaxy International LLC;

33.     $250,000.00 in funds seized from Comerica account ending in -0847 on or about September 21, 2020, maintained in the name of Horizon 5 Lakes LLC;

34.     $5,000.98 in funds seized from Comerica account ending in -7836 on or about September 21, 2020, maintained in the name of Anju Babbar;

35.     $5,000.35 in funds seized from Comerica account ending in -7968 on or about September 21, 2020, maintained in the name of Anju Babbar;

36.     $250,905.71 in funds seized from Merrill Lynch brokerage account ending in -7Q11 on or about September 21, 2020, maintained in the name of Dinesh Sah;

**Vehicles**

37.     A 2020 Bentley Continental-Convertible (VIN# SCBDB4ZG5LC079786) seized from 471 Clear Creek Lane, Coppell, TX 75019 on or about September 18, 2020;

38.     A 2015 Porsche Macan (VIN# WP1AB2A53FLB63347) seized from 331 Still Forest Drive, Coppell, TX 75019 on or about September 18, 2020;

39.     A 2020 Cadillac XT6 (VIN# 1GYKPHRS8LZ170172) seized from 331 Still Forest Drive, Coppell, TX 75019 on or about September 18, 2020;

40.     A 2020 Chevrolet Corvette (VIN# 1G1Y82D40L5102760) seized from 471 Clear Creek Lane, Coppell, TX 75019 on or about September 18, 2020;

26

41.     A 2017 Cadillac XT5 (VIN# 1GYKNBRSXHZ101252) seized from the street on Clear Creek Lane, Coppell, TX 75019 on or about September 18, 2020;

**Real Property**

42.     All that lot or parcel of land, together with buildings, improvements, fixtures, attachments, and easements located at 454 Clear Creek Lane, Coppell, Texas 75019 owned by Dinesh Sah and Anju Babbar, more fully described as follows: Lot 36, Block D, Willowood No. 2, an Addition to the City of Coppell, Dallas, County, Texas, according to the map or plat thereof recorded in Volume 79095, Page 746, Map Records, Dallas County, Texas;

43.     All that lot or parcel of land, together with buildings, improvements, fixtures, attachments, and easements located at 471 Clear Creek Lane, Coppell, Texas 75019 owned by Dinesh Sah and Anju Babbar, more fully described as follows: Lot 12, Block E, Willowood No. 2, an Addition to the City of Coppell, Dallas, County, Texas, according to the map or plat thereof recorded in Volume 79095, Page 746, Map Records, Dallas County, Texas;

44.     All that lot or parcel of land, together with buildings, improvements, fixtures, attachments, and easements located at 331 Still Forest Drive, Coppell, Texas 75019 owned by Dinesh Sah and Anju Babbar, more fully described as follows: Lot 14, Block 5 of Park Meadow, Section Two, an Addition to the City of Coppell, Dallas County, Texas, according to the plat thereof recorded in volume 86108, page 6974, Map Records, Dallas County, Texas;

45.     All that lot or parcel of land, together with buildings, improvements,

fixtures, attachments, and easements located at 208 Bricknell Lane, Coppell, Texas

75019 owned by Dinesh Sah and Anju Babbar, more fully described as follows: Lot 9,

Block A of Village at Cottonwood Creek Section V, an Addition to the City of Coppell,

Dallas County, Texas, according to the plat thereof recorded in volume 97061, page

3057, Map Records, Dallas County, Texas;

46.     All that lot or parcel of land, together with buildings, improvements,

fixtures, attachments, and easements located at 318 Buttonwood Court, Coppell, Texas

75019 owned by Dinesh Sah and Anju Babbar, more fully described as follows: Lot 19,

in Block B of Villages at Cottonwood Creek, Section IV, an Addition to the City of

Coppell, Dallas County, Texas, according to the plat thereof recorded in volume 93039,

page 1542, Map Records, Dallas County, Texas;

47.     All that lot or parcel of land, together with buildings, improvements,

fixtures, attachments, and easements located at 631 Beal Lane, Coppell, Texas 75019

owned by Dinesh Sah and Anju Babbar, more fully described as follows: Lot No. 3,

Block D of Oakbend Addition, an Addition to the City of Coppell, Dallas County, Texas,

according to the plat thereof recorded in volume 91059, page 1427, Map Records, Dallas

County, Texas;

48.     All that lot or parcel of land, together with buildings, improvements,

fixtures, attachments, and easements located at 22852 Runnymede Street, West Hills,

California 91307 owned by Anju Babbar, more fully described as follows: Lot 8 of Tract

No. 22800, in the City of Los Angeles, County of Los Angeles, State of California, as per

Map recorded in Book 634, Pages 77 and 78 of Maps, in the Office of the County

Recorder of said County, except therein, an undivided one-half interest in and to all oil

and mineral rights, but without the right of entry to the surface or to the subsurface to a

depth of 500 feet of said land, as granted to Bernard Spiegel, a married man, by deed

recorded October 30, 1958 as Instrument No. 2941, in Book D 261, Page 430 of Official

Records; also except therefrom an undivided one-half interest in and to all oil and mineral

rights, but without the right to entry to the surface or to the subsurface to a depth of 500

feet of said land, as granted to Home Builders Mortgage Co., a corporation, by deed

recorded October 30, 1958 as Instrument No. 2939 in Book 261, Page 428, Official

Records; also except therefrom all rights to oil and minerals in and under said land, but

without right of entry to the surface or the subsurface to a depth of 500 feet of said land,

as set forth in the Declaration of Restrictions recorded January 21, 1959 as Instrument

No. 2456 in Book M202, Page 240, Official Records, and as excepted in the deed

recorded January 13, 1960; and

      49.    All that lot or parcel of land, together with buildings, improvements,

fixtures, attachments, and easements located at 22107 Cajun Court, Canoga Hills,

California 91303 owned by Anju Babbar, more fully described as follows: A

condominium comprised of Parcel 1: Unit No. 3, as shown and described on the

Condominium Plan for Tract No. 60460, recorded April 17, 2006 as Instrument No. 06-

832932 of Official Records of Los Angeles County; and Parcel 2: An undivided $1/18^{th}$

interest, as tenant in common, in Lot 1 of Tract No. 60460, in the City of Los Angeles,

County of Los Angeles, State of California, as per Map recorded in Book 1312, Pages 29

and 30 of Maps, in the Office of the County Recorder of said Count; except therefrom Units 1 to 18 inclusive as shown on the Condominium Plan referred to in Parcel 1.

A TRUE BILL

_____
FOREPERSON

ERIN NEALY COX
UNITED STATES ATTORNEY

DANIEL S. KAHN,
ACTING CHIEF
FRAUD SECTION, CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE

ANNA G. KAMINSKA
Assistant Deputy Chief
Fraud Section, Criminal Division
New York Bar No. 4202958
U.S. Department of Justice
1400 New York Avenue, N.W.
Washington, D.C. 20530
(202) 355-5715
Anna.Kaminska@usdoj.gov

KATHERINE MILLER
Assistant United States Attorney
Texas Bar No. 00789107
ERICA R. HILLIARD
Assistant United States Attorney
Mississippi Bar No. 104244
1100 Commerce Street, Suite 300
Dallas, Texas 75242
(214) 659-8647
Katherine.Miller@usdoj.gov
Erica.Hilliard@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

THE UNITED STATES OF AMERICA

v.

DINESH SAH

INDICTMENT

18 U.S.C. § 1343 and 2
Wire Fraud
(Counts 1-3)

18 U.S.C. §§ 1344 (2) and 2
Bank Fraud
(Counts 4-6)

18 U.S.C. §§ 1957 (2) and 2
Engaging in Monetary Transactions in Property
Derived from Specified Unlawful Activity
(Count 7)

7 Counts

A true bill rendered

----------------------------------------------------------------------------------------------------
DALLAS                                                                          FOREPERSON

Filed in open court this ⎰4⎱ day of October, 2020.

----------------------------------------------------------------------------------------------------

**Warrant to be Issued**

----------------------------------------------------------------------------------------------------

_____
UNITED STATES MAGISTRATE JUDGE
Magistrate Court Number: 3:20-mj-960-BK