IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | NO. 3:20-CR-484-S |
| DINESH SAH | |

## PLEA AGREEMENT

Dinesh Sah, the defendant, Reed Prospere, the defendant's attorney, and the United States of America (the government) agree as follows:

1. **Rights of the defendant**: The defendant understands that the defendant has the rights:

    a. to plead not guilty;

    b. to have a trial by jury;

    c. to have the defendant's guilt proven beyond a reasonable doubt;

    d. to confront and cross-examine witnesses and to call witnesses in the defendant's defense; and

    e. against compelled self-incrimination.

2. **Waiver of rights and plea of guilty**: The defendant waives these rights and pleads guilty to the offenses alleged in Counts One and Seven of the indictment, charging violations of 18 U.S.C. § 1343 and 18 U.S.C. § 1957, that is, wire fraud and engaging in monetary transactions in property derived from specified unlawful activity, respectively. The defendant understands the nature and elements of the crimes to which

Plea Agreement—Page 1

the defendant is pleading guilty, and agrees that the factual resume the defendant has signed is true and will be submitted as evidence.

3. **Sentence**: The maximum penalties the Court can impose include:

   a. imprisonment for a period not to exceed twenty years, for Count One, and imprisonment for a period not to exceed ten years, for Count Seven, for a total term of imprisonment for a period not to exceed thirty years;

   b. a fine not to exceed $250,000, or twice any pecuniary gain to the defendant or loss to the victim, for Count One; and a fine not to exceed $250,000, or twice any pecuniary gain to the defendant or loss to the victim, or twice the amount of the criminally derived property involved in the transaction for Count Seven;

   c. a term of supervised release of not more than three years for Count One and not more than three years for Count Seven, which is mandatory under the law and will follow any term of imprisonment. If the defendant violates the conditions of supervised release, the defendant could be imprisoned for the entire term of supervised release;

   d. a mandatory special assessment of $100 for each count, for a total of $200;

   e. restitution to victims or to the community, which is mandatory under the law, and which the defendant agrees may include restitution arising from all relevant conduct, not limited to that arising from the offense of conviction alone;

   f. costs of incarceration and supervision; and

   g. forfeiture of property.

Plea Agreement—Page 2

4. **Immigration consequences**: The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses. The defendant understands this may include the offense to which the defendant is pleading guilty, and for purposes of this plea agreement, the defendant assumes the offense is a removable offense. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including the defendant's attorney or the district court, can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that the defendant's plea of guilty may entail, even if the consequence is the defendant's automatic removal from the United States.

5. **Court's sentencing discretion and role of the Guidelines**: The defendant understands that the sentence in this case will be imposed by the Court after consideration of the United States Sentencing Guidelines. The guidelines are not binding on the Court, but are advisory only. The defendant has reviewed the guidelines with the defendant's attorney, but understands no one can predict with certainty the outcome of the Court's consideration of the guidelines in this case. The defendant will not be allowed to withdraw the defendant's plea if the defendant's sentence is higher than expected. The

Plea Agreement—Page 3

defendant fully understands that the actual sentence imposed (so long as it is within the statutory maximum) is solely in the discretion of the Court.

6.   **Mandatory special assessment**: Prior to sentencing, the defendant agrees to pay to the U.S. District Clerk the amount of $200, in satisfaction of the mandatory special assessment in this case.

7.   **Defendant's agreement**: The defendant shall give complete and truthful information and/or testimony concerning the defendant's participation in the offense of conviction. Upon demand, the defendant shall submit a personal financial statement under oath and submit to interviews by the government and the U.S. Probation Office regarding the defendant's capacity to satisfy any fines or restitution. The defendant expressly authorizes the United States Attorney's Office to immediately obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court. The defendant fully understands that any financial obligation imposed by the Court, including a restitution order and/or the implementation of a fine, is due and payable immediately. In the event the Court imposes a schedule for payment of restitution, the defendant agrees that such a schedule represents a minimum payment obligation and does not preclude the U.S. Attorney's Office from pursuing any other means by which to satisfy the defendant's full and immediately enforceable financial obligation. The defendant understands that the defendant has a continuing obligation to pay in full as soon as possible any financial obligation imposed by the Court.

8. **Forfeiture of property**: The defendant agrees not to contest, challenge, or appeal in any way the administrative or judicial (civil or criminal) forfeiture to the United States of any property noted as subject to forfeiture in the indictment, or seized or restrained in the investigation underlying the indictment, specifically the forfeiture of:

a. **Bank Accounts**

1. $2,848,012.14 in funds seized from J.P. Morgan Chase account ending in - 0206 on or about September 21, 2020, maintained in the name of Dinesh Sah;

2. $1,000,026.53 in funds seized from J.P. Morgan Chase account ending in - 4556 on or about September 21, 2020, maintained in the name of Dinesh Sah;

3. $161,611.65 in funds seized from J.P. Morgan Chase account ending in - 9688 on or about September 21, 2020, maintained in the name of Dinesh Sah;

4. $50,004.51 in funds seized from J.P. Morgan Chase account ending in - 0259 on or about September 21, 2020, maintained in the name of Unilaxy International LLC;

5. $50,001.49 in funds seized from J.P. Morgan Chase account ending in - 5913 on or about September 21, 2020, maintained in the name of Horizon 5 Lakes LLC;

6. $50,001.49 in funds seized from J.P. Morgan Chase account ending in - 7047 on or about September 21, 2020, maintained in the name of Relief Without Borders LLC;

7. $50,005.33 in funds seized from J.P. Morgan Chase account ending in - 7802 on or about September 21, 2020, maintained in the name of Convergenz Entertainment LLC;

8. $50,001.49 in funds seized from J.P. Morgan Chase account ending in - 2501 on or about September 21, 2020, maintained in the name of Symbiont LLC;

9. $43,220.64 in funds seized from J.P. Morgan Chase account ending in -5588 on or about September 21, 2020, maintained in the name of Dinesh Sah;

10. $27,128.00 in funds seized from J.P. Morgan Chase account ending in -5779 on or about September 21, 2020, maintained in the name of Panin LLC;

11. $19,188.22 in funds seized from J.P. Morgan Chase account ending in -2642 on or about September 21, 2020, maintained in the name of Unilaxy International LLC;

12. $10,000.18 in funds seized from J.P. Morgan Chase account ending in -5102 on or about September 21, 2020, maintained in the name of Panin LLC;

13. $10,000.16 in funds seized from J.P. Morgan Chase account ending in -7970 on or about September 21, 2020, maintained in the name of Dinesh Sah;

14. $10,000.16 in funds seized from J.P. Morgan Chase account ending in -8854 on or about September 21, 2020, maintained in the name of Dinesh Sah;

15. $10,000.16 in funds seized from J.P. Morgan Chase account ending in -8964 on or about September 21, 2020, maintained in the name of Dinesh Sah;

16. $10,000.10 in funds seized from J.P. Morgan Chase account ending in -6921 on or about September 21, 2020, maintained in the name of Gysin Group LLC;

17. $10,000.09 in funds seized from J.P. Morgan Chase account ending in -9980 on or about September 21, 2020, maintained in the name of Quadrant Clover LLC;

18. $10,000.00 in funds seized from J.P. Morgan Chase account ending in -6708 on or about September 21, 2020, maintained in the name of Horizon 5 Lakes LLC;

19. $9,905.00 in funds seized from J.P. Morgan Chase account ending in -0121 on or about September 21, 2020, maintained in the name of Convergenz Entertainment LLC;

20. $9,905.00 in funds seized from J.P. Morgan Chase account ending in -4321 on or about September 21, 2020, maintained in the name of Symbiont LLC d/b/a Symbiont Retailers;

21. $9,905.00 in funds seized from J.P. Morgan Chase account ending in -9715 on or about September 21, 2020, maintained in the name of Symbiont LLC;

22. $9,810.00 in funds seized from J.P. Morgan Chase account ending in -9935 on or about September 21, 2020, maintained in the name of Relief Without Borders LLC;

23. $2,500.00 in funds seized from J.P. Morgan Chase account ending in -1252 on or about September 21, 2020, maintained in the name of Gysin Group LLC;

24. $2,500.00 in funds seized from J.P. Morgan Chase account ending in -7773 on or about September 21, 2020, maintained in the name of Quadrant Clover LLP;

25. $100,008.57 in funds seized from Bank of America account ending in -5041 on or about September 21, 2020, maintained in the name of Dinesh Sah;

26. $58,203.56 in funds seized from Bank of America account ending in -4437 on or about September 21, 2020, maintained in the name of Dinesh Sah;

27. $28,441.01 in funds seized from Bank of America account ending in -2798 on or about September 21, 2020, maintained in the name of Unilaxy Advisors LLC;

28. $9,997.72 in funds seized from Bank of America account ending in -3028 on or about September 21, 2020, maintained in the name of Unilaxy Advisors LLC;

29. $250,032.53 in funds seized from Comerica account ending in -0854 on or about September 21, 2020, maintained in the name of Symbiont Capital LLC;

30. $250,032.53 in funds seized from Comerica account ending in -7885 on or about September 21, 2020, maintained in the name of Dinesh Sah;

31. $250,000.00 in funds seized from Comerica account ending in -0839 on or about September 21, 2020, maintained in the name of Unilaxy International LLC;

32. $250,000.00 in funds seized from Comerica account ending in -0847 on or about September 21, 2020, maintained in the name of Horizon 5 Lakes LLC;

33. $5,000.98 in funds seized from Comerica account ending in -7836 on or about September 21, 2020, maintained in the name of Anju Babbar;

34. $5,000.35 in funds seized from Comerica account ending in -7968 on or about September 21, 2020, maintained in the name of Anju Babbar;

35. $250,905.71 in funds seized from Merrill Lynch brokerage account ending in -7Q11 on or about September 21, 2020, maintained in the name of Dinesh Sah;

36. Any and all funds up to $17,304,491.12 from Citibank account ending in -0583, maintained in the name of Dinesh Sah;

37. Any and all funds up to $17,304,491.12 from Citibank account ending in -0591, maintained in the name of Dinesh Sah;



38. Any and all funds up to $2,000,000 from Technology Credit Union account ending in -7530, maintained in the name of ChargEdge, Inc.

b. **Vehicles**

1. A 2020 Bentley Continental-Convertible (VIN# SCBDB4ZG5LC079786) seized from 471 Clear Creek Lane, Coppell, TX 75019 on or about September 18, 2020;

2. A 2015 Porsche Macan (VIN# WP1AB2A53FLB63347) seized from 331 Still Forest Drive, Coppell, TX 75019 on or about September 18, 2020;

3. A 2020 Cadillac XT6 (VIN# 1GYKPHRS8LZ170172) seized from 331 Still Forest Drive, Coppell, TX 75019 on or about September 18, 2020;

4. A 2020 Chevrolet Corvette (VIN# 1G1Y82D40L5102760) seized from 471 Clear Creek Lane, Coppell, TX 75019 on or about September 18, 2020;

5. A 2017 Cadillac XT5 (VIN# 1GYKNBRSXHZ101252) seized from the street on Clear Creek Lane, Coppell, TX 75019 on or about September 18, 2020;

6. A 2017 Audi A6 vehicle with (VIN# WAUF2AFC8HN104906), which was purchased and registered to Dinesh Sah.

c. **Real Property**

1. All that lot or parcel of land, together with buildings, improvements, fixtures, attachments, and easements located at 454 Clear Creek Lane, Coppell, Texas 75019 owned by Dinesh Sah and Anju Babbar, more fully described as follows: Lot 36, Block D, Willowood No. 2, an Addition to the City of Coppell, Dallas, County, Texas, according to the map or plat thereof recorded in Volume 79095, Page 746, Map Records, Dallas County, Texas;

2. All that lot or parcel of land, together with buildings, improvements, fixtures, attachments, and easements located at 471 Clear Creek Lane, Coppell, Texas 75019 owned by Dinesh Sah and Anju Babbar, more fully described as follows: Lot 12, Block E, Willowood No. 2, an Addition to the City of Coppell, Dallas, County, Texas, according to the map or plat thereof recorded in Volume 79095, Page 746, Map Records, Dallas County, Texas;

3. All that lot or parcel of land, together with buildings, improvements, fixtures, attachments, and easements located at 331 Still Forest Drive, Coppell, Texas 75019 owned by Dinesh Sah and Anju Babbar, more fully described as follows: Lot 14, Block 5 of Park Meadow, Section Two, an Addition to the City of Coppell, Dallas County, Texas, according to the plat thereof recorded in volume 86108, page 6974, Map Records, Dallas County, Texas;

4. All that lot or parcel of land, together with buildings, improvements, fixtures, attachments, and easements located at 208 Bricknell Lane, Coppell, Texas 75019 owned by Dinesh Sah and Anju Babbar, more fully described as follows: Lot 9, Block A of Village at Cottonwood Creek Section V, an Addition to the City of Coppell, Dallas County, Texas, according to the plat thereof recorded in volume 97061, page 3057, Map Records, Dallas County, Texas;

5. All that lot or parcel of land, together with buildings, improvements, fixtures, attachments, and easements located at 318 Buttonwood Court, Coppell, Texas 75019 owned by Dinesh Sah and Anju Babbar, more fully described as follows: Lot 19, in Block B of Villages at Cottonwood Creek, Section IV, an Addition to the City of Coppell, Dallas County, Texas, according to the plat thereof recorded in volume 93039, page 1542, Map Records, Dallas County, Texas;

6. All that lot or parcel of land, together with buildings, improvements, fixtures, attachments, and easements located at 631 Beal Lane, Coppell, Texas 75019 owned by Dinesh Sah and Anju Babbar, more fully described as follows: Lot No. 3, Block D of Oakbend Addition, an Addition to the City of Coppell, Dallas County, Texas, according to the plat thereof recorded in volume 91059, page 1427, Map Records, Dallas County, Texas;

7. All that lot or parcel of land, together with buildings, improvements, fixtures, attachments, and easements located at 22852 Runnymede Street, West Hills, California 91307 owned by Anju Babbar, more fully described as follows: Lot 8 of Tract No. 22800, in the City of Los Angeles, County of Los Angeles, State of California, as per Map recorded in Book 634, Pages 77 and 78 of Maps, in the Office of the County Recorder of said County, except therein, an undivided one-half interest in and to all oil and mineral rights, but without the right of entry to the surface or to the subsurface to a depth of 500 feet of said land, as granted to Bernard Spiegel, a married man, by deed recorded October 30, 1958 as Instrument No. 2941, in Book D 261, Page 430 of Official Records; also except therefrom an undivided one-half interest in and to all oil and mineral rights, but without the right to entry to the surface or to the subsurface to a depth of 500 feet of said land, as granted to Home Builders Mortgage Co., a corporation, by deed recorded October 30, 1958 as Instrument No. 2939 in Book 261, Page 428, Official Records; also except therefrom all rights to oil and minerals in and under said land, but without right of entry to the surface or the subsurface to a depth of 500 feet of said land, as set forth in the Declaration of Restrictions recorded January 21, 1959 as Instrument No. 2456 in Book M202, Page 240, Official Records, and as excepted in the deed recorded January 13, 1960; and

8. All that lot or parcel of land, together with buildings, improvements, fixtures, attachments, and easements located at 22107 Cajun Court, Canoga Hills, California 91303 owned by Anju Babbar, more fully described as follows: A condominium comprised of Parcel 1: Unit No. 3, as shown and described on the Condominium Plan for Tract No. 60460, recorded April

Plea Agreement—Page 10

17, 2006 as Instrument No. 06-832932 of Official Records of Los Angeles County; and Parcel 2: An undivided 1/18th interest, as tenant in common, in Lot 1 of Tract No. 60460, in the City of Los Angeles, County of Los Angeles, State of California, as per Map recorded in Book 1312, Pages 29 and 30 of Maps, in the Office of the County Recorder of said Count; except therefrom Units 1 to 18 inclusive as shown on the Condominium Plan referred to in Parcel 1.

d. **Other Property**

1. Any and all funds up to $77,805.15 from New York Life Insurance Company for a life-insurance policy in the name of Dinesh Sah;

2. The timeshare held with Grand Pacific MarBrisa Resort, Unit GMP583217A1Z, located 1594 MarBrisa Circle, Carlsbad, CA 92008, which was purchased by Dinesh Sah and Anju Babbar;

3. The payments to American Legend Homes in the amount of $50,000 towards the purchase of the residential property located at 1367 Horsetail Place, Coppell, Texas 75019, by Dinesh Sah and Anju Babbar;

4. The payments to American Legend Homes in the amount of $700,000 towards the purchase of the residential property located at 1388 Horsetail Place, Coppell, Texas 75019, by Dinesh Sah and Anju Babbar;

5. The payments to American Legend Homes in the amount of $50,000 towards the purchase of the residential property located at 1335 Wood Duck Drive, Coppell, Texas 75019, by Dinesh Sah and Anju Babbar;

6. The payments to American Legend Homes in the amount of $50,000 towards the purchase of the residential property located at 1324 Otter Way, Coppell, Texas 75019, by Dinesh Sah and Anju Babbar;

7. The payments to Pankaj Gohil in the amount of $3,000,000 to acquire interests in Panin High Tech Solutions, Limited;

8. The payments to TiE SoCal Angels Fund 2020, LLC in the amount of $100,000.00 to purchase interests in the fund.

9. Cash in the amount of $1,500 located in a 2017 Cadillac XT5 (VIN# 1GYKNBRSXHZ101252) that was seized on September 18, 2020; and

    10.    Cash in the amount of $2,020 located on the person of Dinesh Sah upon his arrest on September 12, 2020.

The defendant agrees that this property is subject to forfeiture under 18 U.S.C. §§ 981(a)(1)(c) and 982(a)(1) and 28 U.S.C. § 2461(c). The defendant consents to entry of any orders or declarations of forfeiture regarding such property and waives any requirements (including notice of forfeiture) set out in 19 U.S.C. §§ 1607-1609; 18 U.S.C. §§ 981, 983, and 985; the Code of Federal Regulations; and Rules 11 and 32.2 of the Federal Rules of Criminal Procedure. The defendant agrees to provide truthful information and evidence necessary for the government to forfeit such property. The defendant agrees to hold the government, its officers, agents, and employees harmless from any claim whatsoever in connection with the seizure, forfeiture, storage, or disposal of such property.

    9.    **Government's agreement**: The government will not bring any additional charges against the defendant based upon the conduct underlying and related to the defendant's plea of guilty. The government will file a Supplement in this case, as is routinely done in every case, even though there may or may not be any additional terms. The government will dismiss, after sentencing, any remaining charges in the pending indictment. This agreement is limited to the United States Attorney's Office for the Northern District of Texas and the Criminal Division's Fraud Section of the Department of Justice and does not bind any other federal, state, or local prosecuting authorities, nor

does it prohibit any civil or administrative proceeding against the defendant or any property.

10.   **Violation of agreement**: The defendant understands that if the defendant violates any provision of this agreement, or if the defendant's guilty plea is vacated or withdrawn, the government will be free from any obligations of the agreement and free to prosecute the defendant for all offenses of which it has knowledge. In such event, the defendant waives any objections based upon delay in prosecution. If the plea is vacated or withdrawn for any reason other than a finding that it was involuntary, the defendant also waives objection to the use against the defendant of any information or statements the defendant has provided to the government, and any resulting leads.

11.   **Voluntary plea**: This plea of guilty is freely and voluntarily made and is not the result of force or threats, or of promises apart from those set forth in this plea agreement. There have been no guarantees or promises from anyone as to what sentence the Court will impose.

12.   **Waiver of right to appeal or otherwise challenge sentence**: The defendant waives the defendant's rights, conferred by 28 U.S.C. § 1291 and 18 U.S.C. § 3742, to appeal the conviction, sentence, fine and order of restitution or forfeiture in an amount to be determined by the district court. The defendant further waives the defendant's right to contest the conviction, sentence, fine and order of restitution or forfeiture in any collateral proceeding, including proceedings under 28 U.S.C. § 2241 and 28 U.S.C. § 2255. The defendant, however, reserves the rights (a) to bring a direct appeal

of (i) a sentence exceeding the statutory maximum punishment, or (ii) an arithmetic error at sentencing, (b) to challenge the voluntariness of the defendant's plea of guilty or this waiver, and (c) to bring a claim of ineffective assistance of counsel.

13. **Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410 waiver**: The defendant and the defendant's attorney have discussed Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence, which ordinarily limit the admissibility of statements made by a defendant in the course of plea discussions or plea proceedings if a guilty plea is later withdrawn. The defendant knowingly and voluntarily waives the rights that arise under these rules in the event that the defendant withdraws the defendant's guilty plea or withdraws from this plea agreement after signing it. The defendant agrees that, as of the date this agreement is signed by both parties, the Factual Resume is admissible in evidence against the defendant in connection with any proceeding involving the Fraud Section of the Department of Justice's Criminal Division or the United States Attorney's Office for the Northern District of Texas.

14. **Representation of counsel**: The defendant has thoroughly reviewed all legal and factual aspects of this case with the defendant's attorney and is fully satisfied with that attorney's legal representation. The defendant has received from the defendant's attorney explanations satisfactory to the defendant concerning each paragraph of this plea agreement, each of the defendant's rights affected by this agreement, and the alternatives available to the defendant other than entering into this agreement. Because the defendant concedes that the defendant is guilty, and after

conferring with the defendant's attorney, the defendant has concluded that it is in the defendant's best interest to enter into this plea agreement and all its terms, rather than to proceed to trial in this case.

15. **Entirety of agreement**: This document is a complete statement of the parties' agreement and may not be modified unless the modification is in writing and signed by all parties. This agreement supersedes any and all other promises, representations, understandings, and agreements that are or were made between the parties at any time before the guilty plea is entered in court. No promises or representations have been made by the United States except as set forth in writing in this plea agreement.

AGREED TO AND SIGNED this 12th day of February, 2021.

PRERAK SHAH
ACTING UNITED STATES ATTORNEY

DANIEL S. KAHN
ACTING CHIEF
FRAUD SECTION, CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE

ANNA G. KAMINSKA
Assistant Deputy Chief
Fraud Section, Criminal Division
New York Bar No. 4202958
U.S. Department of Justice
1400 New York Avenue, N.W.
Washington, D.C. 20530
(202) 355-5715
Anna.Kaminska@usdoj.gov

Plea Agreement—Page 15

_[signature: Ka— Mll]_
KATHERINE MILLER
Section Chief
Texas Bar No. 00789107
ERICA HILLIARD
Assistant United States Attorney
Mississippi Bar No. 104244
1100 Commerce Street, Suite 300
Dallas, Texas 75242
(214) 659-8647
Katherine.Miller@usdoj.gov

I have read or had read to me this plea agreement and have carefully reviewed every part of it with my attorney. I fully understand it and voluntarily agree to it.

_[signature]_  2/10/21
DINESH SAH                                     Date
Defendant

I am the defendant's attorney. I have carefully reviewed every part of this plea agreement with the defendant. To my knowledge and belief, my client's decision to enter into this plea agreement is an informed and voluntary one.

_[signature]_  2/10/21
REED PROSPERE                                  Date
Attorney for Defendant

Plea Agreement—Page 16