IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Case No. 3:20-cr-484-S |
| | § | |
| DINESH SAH | § | |

### MEMORANDUM OPINION AND ORDER

The government filed separate Motions to Dismiss two related third-party petitions for an adjudication of interest in property that was ordered forfeited in this criminal case. At this procedural stage, the government contends only that the petitions are untimely. But, as explained below, Petitioners alleged the government did not provide them with direct notice of the forfeiture proceedings and they did not otherwise have actual notice of the proceedings. Therefore, the government's Motions (ECF Nos. 88, 89) are DENIED.

I. Background

In March of 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security (CARES) Act and created the Paycheck Protection Program (PPP) authorizing the Small Business Administration to distribute more than $650 billion in forgivable loans to small businesses affected by the COVID-19 pandemic. Pub. L. No. 116-136. Beginning shortly thereafter and continuing through August 2020, Defendant Dinesh Sah submitted fraudulent applications under the names of various purported small businesses he owned or controlled to multiple lenders seeking approximately $25 million in PPP loans. Sah misrepresented the number

1

of employees and the amount of payroll expenses these purported businesses had and submitted fraudulent documentation in support of his applications, including false federal tax documents and bank statements. Sah received more than $17 million in PPP funds and used the money to purchase multiple homes, luxury vehicles, and jewelry. He also sent millions of dollars in international money transfers. *See generally* Indictment (ECF No. 14). In particular, Sah transferred $3 million to two bank accounts in Mumbia, India, in July and August 2020—which is the property at issue in the pending third-party petitions.[1]

Federal law enforcement officers quickly recognized Sah's scheme and arrested him in September 2020. Six months later, Sah pleaded guilty to wire-fraud and money-laundering charges; and in July 2021, the Court sentenced Sah to more than eleven years in prison and ordered him to pay $17,284,649.79 in restitution.

On August 24, 2021, the Court issued an Amended Preliminary Order of Forfeiture (ECF No. 71), which specifically identifies the $3 million in international money transfers as forfeited property. On October 4, 2021, the government filed its Notice of Publication regarding forfeiture, indicating that the government posted notice of this forfeiture action on the official government forfeiture website

---

[1] On July 14, 2020, Sah transferred $1.5 million in U.S. currency to an account in the name of Panin Hitech Solutions Pvt. Ltd. at the Axis Bank Limited in Mumbai, India. And on August 4, 2020, Sah transferred $1.5 million in U.S. currency transferred to an account in the name of Panin Hitech Solutions Pvt. Ltd. at the HDFC Bank Limited Kanjur Marg East in Mumbai, India. Am. Preliminary Ord. of Forfeiture 9 (ECF No. 71).

(www.forfeiture.gov) for at least 30 consecutive days beginning on August 27, 2021. (ECF No. 75).

On March 15, 2022, Petitioners Panin Hitech Solutions Pvt. Ltd. (Panin Hitech) and Pankaj Gohil filed separate third-party petitions under 21 U.S.C. § 853(n) to assert a legal right to the funds in the Indian bank accounts identified in the Amended Preliminary Order of Forfeiture. *See* Pets. (ECF Nos. 82 & 83). In response, the government filed the pending Motions to Dismiss the petitions as untimely. Petitioners dispute they missed the deadline for filing their petitions.

According to Petitioners, Gohil founded Panin Hitech, a corporate entity dealing in commercial grade high-definition technology displays, large interactive video displays, rear projections systems, and related products, in 2010. Pet. of Pankaj L. Gohil ¶ 2 (ECF No. 82). Sah first approached Gohil and expressed an interest in investing in Panin Hitech in 2016. *Id*. ¶ 3. Then in June 2020, Sah approached Gohil again. *Id*. ¶ 4. Sah proposed forming a limited liability company in Texas—Panin LLC—to acquire a controlling interest in Panin Hitech and market Panin Hitech technology products in the United States. *Id*. ¶¶ 5, 7. Sah provided Gohil with entity documents for Panin LLC, including a certification of formation and an operating agreement. *Id*. ¶¶ 7-8. In August, Gohil transferred shares of Panin Hitech to Panin LLC, and Sah sent $3 million to Petitioners by international money transfers to Panin Hitech's bank accounts in Mumbai, India. *Id*. ¶¶ 13-14.

Petitioners disavow any contemporaneous knowledge of Sah's criminal activities. They contend Panin Hitech first became aware of Sah's fraud in

September 2020, when Sah's wife contacted Gohil and informed him that the IRS had questions about the Panin LLC transactions. *See id.* ¶ 18. Gohil spoke with an IRS agent on September 26, 2020, and Gohil believed the IRS considered him to be another victim of Sah's fraud. *Id.* ¶ 19; *see also* Hr'g. Ex. 1 (ECF No. 97).

In June 2021, government prosecutors conferred with Gohil and his attorney and Gohil agreed to assemble documents to help further the investigation. Pet. of Pankaj L. Gohil ¶ 20. Petitioners assert that the government failed to follow up and did not contact Gohil regarding efforts to recover any forfeited property, including any funds deposited in Panin Hitech's Indian bank accounts. *See id.* Instead, Indian law enforcement sources contacted Gohil in mid-December with new requests for information about the international transfers from Sah to Panin Hitech. *Id.* ¶ 21; *see also* Hr'g. Ex. 2, 3. And on or about December 30, 2021, Gohil learned that funds in Panin Hitech's Indian bank accounts had been restrained. Pet. of Pankaj L. Gohil ¶ 21. But Gohil did not know who restrained the funds—or under what authority—or why the funds were no longer available. *Id.*

In an effort to understand what had happened to Petitioners' funds, Petitioners' counsel contacted government prosecutors on January 5, 2022. *Id.* The various individuals involved in the communications have differing recollections of their discussions, but the government apparently advised Petitioners' counsel that the Department of Justice (DOJ) had requested the Indian government to seize Petitioners' funds as forfeited property in this criminal action. According to Petitioners, however, the government failed to adequately

4

explain or describe what was effected pursuant to the government's request, or whether the funds had been seized pursuant to the government's request or by the Indian government on its own initiative. *Id.* ¶¶ 20-21. The government also refused to confirm or deny that the seizure was pursuant to a United States court order, and the government did not provide any records or other documents to assist Petitioners' counsel in identifying the legal basis for the seizure of Petitioners' funds. *Id.* ¶ 21. Thus, in an attempt to learn more, Petitioners filed their petitions under 21 U.S.C. § 853(n).

The government moved the Court to dismiss the petitions as untimely because they were not filed within 30 days of the date the government published notice of the forfeiture order on the forfeiture website. The government did not challenge the merits of the petition, but stated that "[i]f the Court does not dismiss the petition[s], the Government will move to conduct discovery under Fed. R. Crim. P. 32.2(c)(1)(B) regarding the merits of the petition." Mot. 6, n.2 (ECF No. 88). The parties fully briefed the notice issue, and the Court held a hearing on the government's motions on May 2, 2022.

II.   Legal Standards

"To obtain title to property through criminal forfeiture, the government must give third parties a chance to assert competing interests in the property." *United States v. Erpenbeck*, 682 F.3d 472, 475 (6th Cir. 2012) (citation omitted). To do so, 21 U.S.C. § 853 and Federal Rule of Criminal Procedure 32.2 prescribe a two-track criminal-forfeiture procedure.

5

As soon as possible after a verdict or a guilty plea, a district court must enter a "preliminary order of forfeiture," which sets forth the amount of any money forfeiture and lists any specific property to be forfeited. Fed. R. Crim. P. 32.2(b). The court enters the preliminary order of forfeiture "without regard to any third party's interest in the property," Fed. R. Crim. P. 32.2(b)(2)(A), and that preliminary order becomes final as to the defendant "[a]t sentencing—or at any time before sentencing if the defendant consents[.]" Fed. R. Crim. P. 32.2(b)(4)(A).

After the court enters the preliminary order, § 853(n) requires the government to provide notice of the proceedings to third parties, giving them thirty days to file a petition asserting their claims. 21 U.S.C. § 853(n)(1)-(2); 18 U.S.C. § 1963(l)(2). "If no one files a petition within the statutory time frame, 'clear title' vests in the United States, extinguishing all other parties' interests in the property." *Erpenbeck*, 682 F.3d at 475 (quoting 21 U.S.C. § 853(n)(7)). However, if any third parties file a petition, the court considers whether they may have a superior interest in the property using separate "ancillary proceedings." *Id.* (citing § 853(n)(2)).

Although these proceedings arise in a criminal context, they closely resemble civil proceedings. *United States v. Stone*, 304 F. App'x 334, 335–36 (5th Cir. 2008) (citing *United States v. Corpus*, 491 F.3d 205, 208 (5th Cir. 2007)). For example, under Rule 32.2(c)(1), the court may, on a party's motion, "dismiss the petition for lack of standing, for failure to state a claim, or for any other lawful reason." Fed. R. Crim. P. 32.2(c)(1)(A). Motions to dismiss under this provision resemble motions

under Federal Rule of Civil Procedure 12(b), *Pacheco v. Serendensky*, 393 F.3d 348, 352 (2d Cir. 2004) (citation omitted), and "the facts set forth in the petition are assumed to be true." Fed. R. Crim. P. 32.2(c)(1)(A). After disposing of any motion under Rule 32.2(c)(1), the court may allow the parties to conduct discovery; and after discovery ends, a party may move for summary judgment under Federal Rule of Civil Procedure 56. Fed. R. Crim. P. 33(c)(1)(B). After the ancillary proceedings end, the court enters a final order of forfeiture that accounts for any third-party rights. Fed. R. Crim. P. 32.2(c)(2).

"Due process requires the government to provide 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of' a legal action that will determine their rights to property, and to 'afford them an opportunity to present their objections.'" *Erpenbeck*, 682 F.3d at 476 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Under this "reasonably calculated" standard, the government must "attempt to provide direct notice of the proceeding" to individuals or entities that "the government knows or reasonably should know" are interested parties. *Id.* (citations omitted).

Various federal rules governing the forfeiture process codify the standard. Under the Supplemental Rule for Admiralty or Maritime Claims and Asset Forfeiture Actions G(4)(b)(iii)(A), notice to third parties "must be sent by means reasonably calculated to reach the potential claimant." And Federal Rule of Criminal Procedure 32.2(b)(6)(A) requires that where "the court orders the

7

forfeiture of specific property, the government must publish notice of the order and send notice to any person who reasonably appears to be a potential claimant with standing to contest the forfeiture in the ancillary proceeding." The notice "must describe the forfeited property, state the times under the applicable statute when a petition contesting the forfeiture must be filed, and state the name and contact information for the government attorney to be served with the petition." Fed. R. Crim. P. 32.2(b)(6)(B).

Finally, while the government must attempt to provide direct notice, "[a] potential claimant who had actual notice of a forfeiture action may not oppose or seek relief from forfeiture because of the government's failure to send the required notice." Supplemental Rule G(4)(b)(v); *Erpenbeck*, 682 F.3d at 476 (citing *United States v. Puig*, 419 F.3d 700, 703–04 (8th Cir. 2005)); *United States v. One Star Class Sloop Sailboat*, 458 F.3d 16, 22 (1st Cir. 2006) ("A putative claimant's actual knowledge of a forfeiture proceeding can defeat a subsequent due process challenge, even if the government botches its obligation to furnish him with notice.").

### III.   Analysis

In its Motions to Dismiss, the government argues that it published notice of the Amended Preliminary Order of Forfeiture on August 27, 2021, and thus Petitioners were required to file a petition within 30 days, or by September 27, 2021. But the facts alleged by Petitioners, which the court is obliged to accept as true for purposes of the government's Motions to Dismiss, Fed. R. Crim. P.

8

32.2(c)(1)(A), are sufficient to show the government knew or reasonably should have known that Petitioners would be interested parties with respect to the funds Sah deposited in Panin Hitech's Indian bank accounts. Thus, due process required the government to attempt to provide Petitioners with direct notice of the forfeiture. *Erpenbeck*, 682 F.3d at 475-76 (holding direct notice may be required in addition to publication). Petitioners allege that they "[have] not received any direct notice [of the forfeiture proceeding] from the Government." Pet. of Pankaj L. Gohil ¶ 21. And the government does not dispute that it did not provide—or even attempt to provide—direct notice of the preliminary order of forfeiture to Petitioners.

In its reply, the government argues that the court should overlook its failure to provide Petitioners with direct notice of the forfeiture proceeding because Petitioners "admit in both their respective petitions and their response that they had *actual notice of the preliminary order of forfeiture* in this case no later than December 2021"—when Gohil learned that the funds in Panin Hitech's Indian bank accounts had been restrained. Reply 1 (ECF No. 95) (emphasis added). However, this is not a fair characterization of Petitioners' pleadings and briefs. Indeed, Petitioners make no admission regarding actual notice of the preliminary order of forfeiture and expressly deny that they were ever advised "that the government had obtained a preliminary order of forfeiture which identified petitioners' bank accounts." Pets.' Resp. 3 (ECF No. 93).

9

At the hearing, the government modified its position slightly and argued that Petitioners had actual notice of the forfeiture proceeding by January 5, 2022, at the latest. But again, this is not a fair characterization of Petitioners' pleadings and briefs. Petitioners do not allege they had actual notice of any forfeiture proceeding by the government on January 5, 2022. Rather, they state that "for the first time," on January 5, "the government advised a representative of the petitioners that the U. S. Department of Justice had requested the government of India to seize petitioner's funds." Pet. of Pankaj J. Gohil ¶ 20. But Petitioners also state:

> The government professed ignorance as to what was actually effected pursuant to their request, or whether funds had been seized pursuant to their request or by the Indian government on their own initiative. They would neither confirm nor deny that the seizure was pursuant to any United States court order. The government did not provide any records or other documents which would have assisted counsel in further identifying the legal basis for the seizure of petitioners' bank accounts in India.

*Id*. Petitioners actually contend they are still in the dark about whether their funds were restrained as a result of any legitimate action by the government. *Id*. at ¶¶ 20-21. And the government appears to share some of that confusion. At the hearing, Petitioners' counsel produced an email from the government's counsel advising that, as of March 7, 2022, "[the government] has not seized these funds." Hrg. Ex. 4.

10

IV. Conclusion

The government's Motions to Dismiss Gohil and Panin Hitech's petitions for an adjudication of interest in forfeited property (ECF Nos, 88, 89) are DENIED.

**SO ORDERED**.

May 23, 2022.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE